UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LESTER WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-938-D |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Lester Williams brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.[1] United States District Judge Timothy D. DeGiusti has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 9, hereinafter "R.__"). The parties have briefed their positions, and the case is now ready for decision.

---

[1] Plaintiff's Brief (Doc. No. 11) refers only to the DIB application, while the Complaint (Doc. No. 1) alleges error in the denial of both the DIB and SSI applications. The undersigned has considered Plaintiff's appellate arguments, and reviewed the propriety of the SSA's denial, with respect to both the DIB and SSI applications.

For the reasons set forth below, the undersigned recommends that the Commissioner's decision be AFFIRMED.

PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB and SSI benefits on October 20, 2010, alleging a disability onset date of May 10, 2010. R. 177-83, 184-89, 218. Following denial of his application initially and on reconsideration, Plaintiff requested and appeared at a hearing before an Administrative Law Judge ("ALJ") on September 19, 2011, along with a nonattorney representative. R. 57-95, 96-123, 124-25, 128-64. The ALJ issued an unfavorable decision on January 26, 2012. R. 23-32. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 6-9; 20 C.F.R. §§ 404.981, 416.1481. This action for judicial review followed.

ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged disability onset date through the date of the decision. R. 25; *see* 20 C.F.R. §§ 404.1571, 416.971. At step two, the ALJ determined that Plaintiff had the severe impairments of "status post gunshot wound to left shoulder; hypertension; and learning disorder." R. 25-27; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 27; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments.  R. 27-30; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ found that Plaintiff had the RFC to perform light work, subject to additional nonexertional limitations:

> [H]e cannot use his left upper extremity for repetitive motion and cannot reach above chest level with his left upper extremity.  He is further limited to the performance of only simple, one[-] or two-step instructions.

R. 27; *see* 20 C.F.R. § 404.1567(b) (defining "light work"); *id.* § 416.967(b) (same).  At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work.  R. 31; *see* 20 C.F.R. §§ 404.1565, 416.965.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform.  Taking into consideration testimony provided by a vocational expert at the hearing, the ALJ concluded that Plaintiff could perform occupations such as food preparation worker or counter attendant, both of which are light, unskilled work and offer jobs that exist in significant numbers in the national and regional economies.  R. 32; *see* 20 C.F.R. §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii).  On that basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 10, 2010, though the date of the decision.  R. 32; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the ALJ's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

Plaintiff contends that the ALJ erred by failing to adequately investigate conflicts between the testimony of the vocational expert and information in the Dictionary of Occupational Titles ("DOT"), rendering her step-five finding not supported by substantial evidence. *See* Pl.'s Br., Doc. No. 11, at 3-7. The undersigned disagrees.

At steps four and five of the sequential analysis, an ALJ may consider testimony by a vocational expert ("VE") regarding the requirements of specific jobs and their availability in the national and regional economies. 20 C.F.R. §§ 404.1560(b)(2), 404.1566(e), 416.960(b)(2), 416.966(e). In *Haddock v. Apfel*, the Tenth Circuit held that an "ALJ must investigate and elicit a reasonable explanation for any conflict between the [*Dictionary of Occupational Titles*] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *See Haddock*, 196 F.3d 1084, 1091 (10th Cir. 1999); *Dictionary of Occupational Titles* ("DOT") (4th rev. ed. 1991). Thereafter, the Commissioner published SSR 00-4p, in which the Commissioner established a policy interpretation for the use of VE evidence. *See* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). Under the SSR, an ALJ has two affirmative responsibilities. First, the ALJ must "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT."[2] *Id.* at *4. If the VE's "evidence appears to conflict with the DOT," then the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id.*

---

[2] Under SSR 00-4p, an ALJ's duty to identify any conflicts between the VE's testimony and the DOT also extends to identifying any conflicts between the VE's testimony and the DOT's companion publication, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, which is published by the Department of Labor. *See* SSR 00-4p, 2000 WL 1898704, at *1. Although technically separate publications, they are frequently considered together. For simplicity, the undersigned refers to both publications collectively as "DOT."

A. *Duty to Inquire about Conflicts*

Plaintiff argues that the ALJ did not fulfill her duty to ask the VE how her testimony corresponded with the information provided in the DOT. *See* Pl.'s Br. at 4-5. This assertion does not accurately represent the ALJ's questioning of the VE. At the hearing, the ALJ clearly instructed the VE that the VE's testimony "must be consistent with the DOT" and requested that "if it's not, can you please point that out and explain any inconsistency?" R. 83. By specifically asking the VE to identify any inconsistencies between her testimony and the DOT, the ALJ adequately fulfilled her duty to inquire.[3]

B. *Duty to Obtain Reasonable Explanation for Conflicts*

Plaintiff further argues that there are conflicts between the VE testimony and the DOT and that the ALJ failed to obtain a reasonable explanation for those conflicts. *See* Pl.'s Br. at 4-5. When a conflict between DOT requirements and VE testimony exists, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and [VE] testimony before the ALJ may rely on the [VE's] testimony as substantial evidence to support a determination of nondisability." *Haddock*, 196 F.3d at 1091. When no conflict exists, however, there is no duty to investigate and obtain an

---

[3] By asserting that the ALJ's required initial question "cannot be found in the record after the VE answered the Representative[']s questions," Pl.'s Br. at 5, it appears that Plaintiff was aware that the question was asked but—in addition to challenging the sufficiency of the ALJ's analysis, discussed below—quibbles with the timing of the ALJ's question. An inquiry prior to the VE's testimony may satisfy the ALJ's duty. *See Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011) ("The text of the Ruling only requires ALJs to inquire about conflicts 'before *relying*' on a VE's testimony, but does not specify whether this inquiry should (or must) occur before or after a VE testifies." (citing SSR 00-4p)). *But see Hernandez v. Astrue*, No. CIV-11-276-W, 2012 WL 3112418, at *1 (W.D. Okla. July 9, 2012) (report and recommendation) (noting Tenth Circuit has not addressed above issue), *adopted*, 2012 WL 3112412 (W.D. Okla. July 31, 2012).

explanation. *See Newburn v. Barnhart*, 62 F. App'x 300, 304 (10th Cir. 2003) (rejecting plaintiff's contention that ALJ did not fulfill duty to resolve discrepancies where there were no "unexplained conflicts" between the VE's testimony and the DOT); SSR 00-4p, 2000 WL 1898704, at *4 (prescribing that the ALJ's duty to obtain reasonable explanation arises only if there appears to be an inconsistency between the two sources). Because no such conflict existed here, Plaintiff's allegation of error fails.[4]

1. "Repetitive" Motion

The ALJ asked the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, and an RFC—matching the one ultimately found by the ALJ—whereby the individual is limited to light work, can perform only simple tasks with one- or two-step instructions, cannot reach above chest level with his left upper extremity, and "cannot use his left upper extremity for repetitive motion." R. 88. The VE testified that, given all of those factors, such an individual would be able to perform the requirements of representative occupations such as food preparation worker (DOT 316.684-014) and counter attendant (DOT 311.677-014). R. 88.

Plaintiff contends that the VE's testimony regarding the available jobs conflicted with the DOT and, consequently, could not provide substantial evidence upon which the ALJ could rely for his step-five findings. Pl.'s Br. at 3-4. Both Plaintiff and the

---

[4] Because no conflict existed, even if the ALJ had failed in her duty to inquire whether there were inconsistencies between the VE's testimony and the DOT, such error would have been harmless. *See Poppa*, 569 F.3d at 1174 ("Because there were no conflicts between the VE's testimony and the DOT's job descriptions, the ALJ's error in not inquiring about potential conflicts was harmless.").

Commissioner agree that, under the DOT, the two jobs offered by the VE require frequent reaching and handling. Pl.'s Br. at 4; Def.'s Br., Doc. No. 12, at 3. Plaintiff argues that the ALJ's prohibition on repetitive motion conflicts with the requirement of frequent reaching and handling. Pl.'s Br. at 4. The Commissioner—citing the DOT's descriptions for various levels of frequency of activity[5]—responds that *constant* motion is a higher level of activity than *frequent* motion under the DOT, and the ALJ's reference to *repetitive* motion should be viewed as equivalent to the former term and not the latter. Def.'s Br. at 3-4. Explaining that, under DOT standards, an individual who cannot move his arm constantly (or repetitively) may still move the arm frequently, the Commissioner argues there is no conflict between a hypothetical that eliminates repetitive motion and a job that requires frequent motion. *Id.* Neither party provides any case law in support of its position.

The Commissioner is correct that, under the DOT, "constantly" denotes more frequent motion than "frequently"—but that fact alone does not answer the question of

---

[5] Specifically, the Commissioner cites *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, which uses the following categories to rank the frequency of occurrence of an activity:

| Code | Frequency | Definition |
| --- | --- | --- |
| N | Not Present | Activity or condition does not exist. |
| O | Occasionally | Activity or condition exists up to 1/3 of the time. |
| F | Frequently | Activity or condition exists from 1/3 to 2/3 of the time. |
| C | Constantly | Activity or condition exists 2/3 or more of the time. |

*See* Def.'s Br. at 3-4; *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* app. C (Physical Demands: Absence or Presence of Other Physical Demand Components) (1993 ed.).

8

what frequency of motion the ALJ intended when she used the term "repetitive." Courts in this Circuit have generally held that an ALJ's finding that an individual cannot engage in repetitive motion is *not* inconsistent with the individual performing a job requiring frequent or occasional (i.e., less than constant) motion. *See, e.g.*, *Gallegos v. Barnhart*, 99 F. App'x 222, 224-25 (10th Cir. 2004) (finding no inconsistency between restrictions on repetitive actions and finding of ability to perform jobs requiring frequent motion; "Plaintiff presumes the terms 'frequent' and 'repetitive' are synonymous, but they are not. In identifying jobs the plaintiff could perform, the VE expressly construed the term 'repetitive' to mean 'from two-thirds to 100 percent of the time.'"); *Merkel v. Astrue*, No. CIV-11-67-M, 2012 WL 967979, at *4-5 (W.D. Okla. Feb. 17, 2012) (report and recommendation) (noting that "there appears to be no definition of 'repetitive,'" but finding no inconsistency between medical restriction of "no repetitive" bending and ALJ's finding that plaintiff could "occasionally" stoop and crouch), *adopted*, 2012 WL 968013 (W.D. Okla. Mar. 20, 2012); *McCarter v. Colvin*, No. 13-2238-SAC, 2014 WL 4908990, at *3 (D. Kan. Sept. 30, 2014) (finding no error when ALJ equated "no repetitive use" with "frequent" activity); *Kiraly v. Colvin*, No. 13-1222-SAC, 2014 WL 4352082, at *4 (D. Kan. Sept. 2, 2014) (finding no inconsistency between medical restriction of "no repetitive" bending, stooping, or twisting, and ALJ's limiting plaintiff to "occasional" bending, stooping, and twisting); *Vine v. Astrue*, No. 09-2212-KHV-GBC, 2010 WL 2245079, at *4-5 (D. Kan. May 11, 2010) (report and recommendation) (finding no conflict between VE testimony and the DOT when VE testified that there was no conflict between jobs that did not require repetitive fingering but did require frequent

fingering, as "repetitive is not the same as frequent"), *adopted*, 2010 WL 2245076 (D. Kan. Jun. 2, 2010). *But see Herbert v. Barnhart*, No. 00-2417-DJW, 2002 WL 31180762, at *8 (D. Kan. Sept. 19, 2002) (finding the ALJ could not rely on VE's testimony due to apparent conflict between restrictions on rapid, repetitive movement and job requirements of constant or frequent physical demand), *amended on other grounds*, 2002 WL 31873407 (D. Kan. Dec. 16, 2002).

Accepting the reasoning of these authorities, there is no conflict between the ALJ's hypothetical question prohibiting repetitive motion of the upper-left extremity and the cited DOT job criteria requiring frequent reaching and handling.[6] The ALJ therefore was not obligated to obtain an explanation for any such conflict. The undersigned finds no error in the ALJ's reliance upon the VE testimony in this regard and that the ALJ's step-five determination is supported by substantial evidence.

---

[6] This conclusion is bolstered by the inferences that reasonably may be drawn from the ALJ's decision and the VE's testimony regarding what they understood the term "repetitive" to mean. As noted above, the ALJ instructed the VE that the VE's testimony "must be consistent with the DOT" and requested, "[I]f it's not, can you please point that out and explain any inconsistency?" R. 83. The VE responded in the affirmative, but she did not at any time during her testimony note any inconsistencies—thus indicating that there were no conflicts between her testimony and the DOT. *See* R. 83-91; *Vine*, No. 09-2212, 2010 WL 2245079, at *4-5 (finding no conflict when VE responded to ALJ's question regarding conflicts that there were none, and plaintiff presented no evidence of a conflict); *see also* R. 88, 89 (ALJ and Plaintiff's representative each referring to both "frequent" and "repetitive" for different aspects of the same hypothetical). Nor did the ALJ note any such inconsistency in her written decision—an omission that likewise indicates that the ALJ did not perceive any conflict.

2. General Educational Development Criteria

Plaintiff next argues that the ALJ should have inquired further regarding an apparent inconsistency between the math and reading requirements for the jobs cited by the VE (as identified by the "GED levels" or "GED codes" for those job listings in the DOT) and the medical evidence discussed by Plaintiff's representative when questioning the VE at the administrative hearing.[7] *See* Pl.'s Br. at 4-5. Specifically, Plaintiff asserts that:

> [Plaintiff's] representative stated that [a psychological evaluation] reflected that [Plaintiff's] reading, math and language [was at] a first to second grade level. . . . In response to the representative['s] question, the VE indicated that neither of the jobs she just listed would be appropriate for such a person with those specific, limited abilities in reading and math. The ALJ asked no follow up questions and accepted the VE's testimony.

Pl.'s Br. at 4 (footnote omitted) (citing R. 89-90). More precisely, the VE testified that the GED codes for the two jobs she suggested were one to two for reasoning, math, and language. R. 90. It was only when Plaintiff's representative proposed a hypothetical limiting all GED codes to ones that the VE testified that "neither of the jobs she just listed would be appropriate." *See* R. 89-90.

The argument as made by Plaintiff is illogical and unavailing. Plaintiff's actual contention would appear to be that—in light of evidence of low math and reading abilities, as cited by Plaintiff's representative when questioning the VE—substantial

---

[7] Notably, although Plaintiff's representative asserted during the hearing that the psychological evaluation reflected math and reading at a first to second grade equivalent, the actual results were more nuanced, including a Word Reading Grade Equivalent of 2.6, a Math Computation Grade Equivalent of 3.5, a Sentence Comprehension Grade Equivalent of 1.7, and a Spelling Grade Equivalent of 2.8. *Compare* R. 89, *with* R. 364.

11

evidence does not support the RFC found by the ALJ, and, thus, the ALJ at step five should not have relied on VE testimony premised on a hypothetical consistent with that allegedly erroneous RFC. Rather than directly challenging the ALJ's RFC assessment, however, Plaintiff attempts to frame the issue as a violation of SSR 00-4p. That Ruling, as discussed above, addresses the need for consistency between the VE's testimony and information in the DOT. Plaintiff points to no conflict between the VE's testimony and the DOT concerning the GED requirements for the jobs at issue. Nor was there any such conflict and, therefore, no violation of SSR 00-4p. The VE testified that the DOT criteria for both food preparation worker and counter attendant specified GED levels of one or two for reasoning, math, and language. R. 90. That testimony accurately reflected the DOT criteria. *See* DOT 316.684-014 (Deli Cutter-Slicer), 1991 WL 672744; DOT 311.677-014 (Counter Attendant, Cafeteria), 1991 WL 672695.

Indeed, it was only when Plaintiff's representative posed an alternative hypothetical scenario, one that included the greater math and reading limitations argued by Plaintiff, that the VE stated that the jobs of food preparation worker and counter attendant would not be available. R. 89-90. However, it is well-settled that an ALJ is not bound by VE testimony in response to a hypothetical that includes impairments he does not accept as applicable. *See, e.g., Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990); *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). Here the ALJ did not accept the alternative hypothetical limitation, did not include it in his RFC, and therefore, was not bound by it during his step-five evaluation.

Even if Plaintiff had made the argument, Plaintiff has not demonstrated that the ALJ's RFC determination is not supported by substantial evidence. In assessing Plaintiff's RFC, the ALJ discussed the results of Plaintiff's psychological evaluation as well as other evidence of record related to Plaintiff's intellectual functioning and mental impairments. R. 29-30. The ALJ then tailored her RFC to accommodate Plaintiff's mental limitations. R. 27. Plaintiff's claim of error is unavailing.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by January 14, 2015. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 31st day of December, 2014.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE